# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CITY OF CHICAGO, ILLINOIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 08 C 3284 |
| | ) |
| STUBHUB, INC., | ) Wayne R. Andersen |
| | ) District Judge |
| Defendant. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the motion of Defendant StubHub, Inc. ("StubHub") to dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the following reasons, the motion to dismiss is granted in part and denied in part.

## BACKGROUND

### I. Allegations of the Complaint

The City of Chicago (the "City") filed this lawsuit against StubHub seeking to collect the City's 8% amusement tax on tickets to Chicago events that are sold through StubHub's Internet listing service. The City also seeks to compel StubHub to provide it with information about the sales of tickets to Chicago events made on StubHub's website from January 1, 2000 to the present.

StubHub is a venue which third parties use to buy and sell tickets. StubHub collects the purchase price from the buyer, keeps a percentage for itself, and remits the balance to the seller. In order to use StubHub's website, users must first register as sellers. As the Complaint alleges, a seller listing an item for sale must fill in numerous fields in order to list an item on the site.

Compl. ¶ 7. As part of this process, the seller will choose from a variety of listing methods, including an auction-style listing or a set-price method. Id. ¶¶ 7-8. In an auction, the seller sets a per-ticket minimum price and decides on the duration of the auction. When the auction comes to an end, the seller sells the ticket to whomever submits the highest bid as long as the reserve has been met. Compl. ¶ 8.  In the fixed price model, the seller sets a price and the ticket is sold to the first person who agrees to pay that price. Id.  The City alleges that if an item listed on StubHub is ultimately sold, StubHub collects a commission--10% of the purchase price as a fee paid by the buyer, and 15% of the purchase price as a fee paid by the seller. Compl. ¶ 10.

## II. Illinois Law Regarding Ticket Resales

For many years, the City of Chicago has imposed a special tax on amusements such as theater performances and sporting events that take place within the city limits (hereinafter "amusement tax"). Chicago Municipal Code § 4-156-020.  There is no doubt that the City has the authority to impose a tax on the venues that sell tickets to amusements. The Illinois General Assembly has specifically granted all municipalities the power to license, regulate and tax "theatricals and other exhibitions, shows and amusements" as well as "all places for eating or amusement." 65 ILCS 5/11-42-5. Tickets sold to events held in Chicago typically include the 8% City amusement tax on the face of the ticket.

Historically, ticket "scalping"--reselling a ticket at a price above its face value--was generally unlawful in Illinois under the Illinois Ticket Sale and Resale Act. 720 ILCS 375/1.5(a). However, the law has evolved over time. In 1991, an exception was made for ticket brokers who are registered with the Illinois Secretary of State to allow them to resell tickets at prices above face value. 720 ILCS 375/1.5(b). To take advantage of the exception, ticket brokers must (among

other things) pay all applicable state and local taxes. 720 ILCS 375/1.5(b)(4). When ticket brokers buy tickets from a venue, they (like any other purchaser) pay the ticket's face amount, relevant fees and applicable taxes, including the amusement tax. *See Mr. B's, Inc. v. City of Chicago,* 706 N.E.2d 1001, 1003 (Ill. App. Ct. 1998).

In 1995, the Chicago Amusement Tax Ordinance was amended to extend the amusement tax to cover secondary ticket sales by persons who resell tickets above face value. Under the amended Chicago amusement tax, ticket resellers are required to pay the 8% amusement tax on the entire amount of any mark-up charged to the ticket purchaser, including any amount the broker may designate as a fee for its brokerage services.

In 2005, the Illinois Ticket Sale and Resale Act, 720 ILCS 375/1.5(c), was amended in a manner that bears directly on the key issues in this case. The amendments added a second exception to the prohibition on ticket scalping. This amendment allows anyone to use certain Internet websites to sell tickets at prices above face value. The legislative history of these amendments shows that they were designed to permit an expansion of the secondary market in tickets (and thus create competition for existing ticket brokers) while at the same time protecting consumers. See Senate Hearing on H.B. 873, Ill. Gen. Ass'y 94th Sess., Sen. Tr. 65 (May 20, 2005) (statement of Sen. Harmon). Toward that end, the prohibition on ticket-scalping is lifted only for those resellers who use "an Internet auction listing service duly registered with the Department of Financial and Professional Regulation under the Auction License Act and with the Office of the Secretary of State on a registration form provided by that Office." 720 ILCS 375/1.5(c).

During legislative debates on the amendments, a proposal was made to require the

operator of a registered listing service or Internet auction site to be responsible for collecting and remitting any applicable amusement taxes--the very obligation that the City seeks to impose against StubHub in this case. The General Assembly rejected that idea. The sponsors of the bill pointed out that Internet auction sites like StubHub do not actually buy or sell tickets, but rather simply offer a marketplace for those who do. They argued that it would make no sense to require StubHub to discharge the seller's obligation to pay amusement taxes. As one of the sponsors put it, requiring entities like StubHub to pay the tax would be "like saying the landlord of a small business needs to make sure that that small business is paying their sales tax." Senate Hearing on H.B. 873, Ill. Gen. Ass'y, 94th Sess., Sen. Tr. 19 (May 18, 2005) (statement of Sen. Harmon).

The General Assembly made a policy decision that, rather than requiring Internet auction listing services to collect and remit amusement taxes, it would require the operator of such a service to do only two things: 1) to warn resellers of their potential liability for municipal amusement taxes; and 2) to provide certain information in response to a request from law enforcement or taxing officials. Thus, the Ticket Sale and Resale Act provides that, to discharge its obligations with respect to state and local taxes, the operator of an Internet auction listing service need only publish:

> a written notice on the website after the sale of one or more tickets that automatically informs the ticket reseller of the ticket reseller's potential legal obligation to pay any applicable local amusement tax in connection with the reseller's sale of tickets, and disclose to law enforcement or other government tax officials, without subpoena, the name, city, state, telephone number, e-mail address, user ID history, fraud complaints, and bidding and listing history of any specifically identified reseller or purchaser upon receipt of a verified request from law enforcement or other government tax officials relating to a criminal investigation or alleged illegal activity.

720 ILCS 375/1.5(c)(6)(B). As one of the bill's sponsors explained, the Internet listing service's disclosure obligations are intended to be very limited:

> If the City of Chicago becomes aware of an eBay user or specific group of eBay users who are habitually failing to remit and collect the city's tax or avoiding their obligations through false user names, then the Bill gives the city the right to obtain from eBay that user's real name, address and transaction history upon submitting a specific request to eBay. From this information, the city may pursue whatever legal action it deems necessary to collect any back taxes or prosecute the user or users for fraud. In addition, if the city has confirmed and informed eBay in writing that a user or a group of specific users have been habitually skirting their obligations, then eBay, StubHub and Ticketmaster have committed, throughout the process of negotiating this Bill, to suspend or terminate that user or users' privileges.

House Debate on H.B. 873, 111. Gen. Ass'y, 94th Sess., H.R. Tr. 130-31 (Apr. 15, 2005) (statement of Rep. Saviano).

After the 2005 amendments to the Ticket Sale and Resale Act, StubHub registered as an Internet Auction Listing Service under the Illinois Ticket Sale and Resale Act and received a license from the State and a certificate from the Secretary of State evidencing its compliance with the provisions of that Act. In order to register as an Internet auction listing service, StubHub was required to certify (among other things) that it "does not act as the agent of users who sell items on its website, and acts only as a venue for user transactions." 225 ILCS 407/1027(c)(1).

On September 1, 2006, the City amended its Amusement Tax Ordinance to require not only "resellers," but also "reseller's agents" to collect and remit the amusement tax from the ultimate purchaser. The Ordinance provides that the term "reseller's agent" means:

> a person who, for consideration, resells a ticket on behalf of the ticket's owner or assists the owner in reselling the ticket. The term includes but is not limited to an auctioneer, a broker or a seller of tickets for amusements, as those terms are used in 65 ILCS 5/11-42-1, and applies whether the ticket is resold by bidding, consignment or otherwise, and whether the ticket is resold in person, at a site on

the Internet or otherwise.

Chicago Municipal Code § 4-156-010. The amended Ordinance provides that it is the joint and several duty of every ticket reseller and reseller's agent to secure from each patron the 8% amusement tax and to remit the tax payment to the City. Chicago Municipal Code § 4-156-020(A). Ticket resellers and reseller's agents are required to remit the tax only on that portion of the ticket price that exceeds the original or face amount of the tickets. Chicago Municipal Code §4-156-030(A). To the extent that ticket resellers are registered taxpayers with the City's Department of Revenue (which ticket brokers must be to be exempt from State ticket-scalping prohibitions), the reseller's agent is relieved of any liability to actually collect the amusement tax. However, when a licensed ticket broker is not involved in the sale, the ordinance provides that the reseller's agent "shall be primarily responsible for collecting and remitting the tax and the reseller shall be responsible for collecting and remitting only if the reseller's agent fails to do so."

In February 2007, the City's Department of Revenue sent a letter to StubHub stating that StubHub might be deemed a "reseller's agent" under the amended Amusement Tax Ordinance and therefore may be required to register for, collect, and remit the Chicago Amusement Tax. Compl. ¶ 25. The letter requested information and documents with respect to StubHub's "facilitation" of ticket resales to amusements located in Chicago from January 1, 2000 through the date of the response. Id. StubHub declined to provide any of the information requested, on the ground that the City could not lawfully require StubHub to collect or remit amusement taxes or require it to provide the documents in question. Id. This lawsuit followed.

## **DISCUSSION**

The parties do not dispute the fact that if a person sells a ticket for more than face value

within the jurisdiction of the City of Chicago, he or she is required to pay the City's 8% amusement tax. The issue in this case is whether StubHub is required by law to collect that amusement tax and pass it along to the City when such a sale occurs on its Internet auction listing site.

The answer to that question is not an easy one and requires resolving an apparent tension between the City's amended Amusement Tax Ordinance and the Illinois Ticket Sale and Resale Act. The text and legislative history of the Illinois Ticket Sale and Resale Act make clear that the Act did not intend for Internet auction listing services, such as StubHub, to collect and remit amusement taxes. However, on the other hand, the City's amended Amusement Tax Ordinance requires a business to collect and remit the amusement tax if it acts as a "reseller's agent", which is defined as "a person who, for consideration, resells a ticket on behalf of the ticket's owner or assists the owner in reselling the ticket," a definition that would seem to apply to StubHub. Thus, in order to resolve this apparent tension, we must examine the interplay between these two governing bodies.

The City's authority to tax amusements derives from its home rule powers under Section 6(a) of Article VII of the 1970 Illinois Constitution, which states that "a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to . . . tax." The power to tax was regarded by the framers of the 1970 Illinois Constitution as "essential to effective home rule," and the framers "intended that power to be broad." See *Mulligan v. Dunne,* 338N.E.2d 6, 10 (Ill. 1975). Consequently, home rule units may exercise "the same powers as the sovereign, except where such powers are limited by the General Assembly." *City of Chicago v. Roman,* 705 N.E.2d 81, 87 (Ill. 1998).

However, whether the City has the home rule authority to require StubHub to collect the

tax imposed on ticket resellers depends on the nature of the tax. *See, e.g., Chicago Health Clubs, Inc. v. Picur,* 528 N.E.2d 978 (Ill. 1988). In 1990, the Illinois General Assembly sought to limit home rule powers by enacting the Preemption Act, 65 ILCS 5/8-11-6a, which prohibits home rule municipalities from using their home rule authority to tax the "sale or purchase of tangible personal property" based on a percentage of the selling or purchase price of the property.

Although there may be some dispute as to whether the sale of amusement tickets at prices above-face value constitutes "tangible personal property," the highest court in Illinois to address the issue, the Illinois Appellate Court, has specifically held that the sale of tickets at above-face value prices by a ticket reseller is the sale of tangible personal property. *Mr. B's, Inc. v. City of Chicago,* 706 N.E.2d 1001, 1005-06 (Ill. App. Ct. 1998). Thus, any home rule authority the City may have had to impose the amusement tax on StubHub is preempted by the Preemption Act.

However, even if home rule authority is preempted, a home rule municipality can still impose whatever taxes the General Assembly has granted all municipalities the power to impose. *See U.S.G. Italian Marketcaffe, LLC v. City of Chicago,* 775 N.E.2d 47, 51 (Ill. App. Ct. 2002). In *Mr. B's,* for example, the Court held that the City could tax ticket brokers even if it had no home rule authority because a state statute specifically authorizes all municipalities to tax "sellers of tickets." *Mr. B's,* 706 N.E.2d at 1007. In this case, by contrast, there is no statute that authorizes a municipality to impose taxing obligations on an Internet auction listing service like StubHub.

On the contrary, in enacting the 2005 amendments to Ticket Sale and Resale Act, the General Assembly expressly relieved StubHub and other Internet auction listing services from having to collect or remit local amusement taxes. 720 ILCS 37511.5(c)(6) (exempting an

8

Internet auction listing service from tax collection obligations). Instead, under the 2005 amendments to the Ticket Sale and Resale Act, StubHub's sole obligation is to: 1) put a prompt on its website warning ticket sellers of their obligation to pay the amusement tax; and 2) provide certain information if requested by municipal authorities.

For these reasons, we find that the City lacks the authority under State law to impose any additional obligation on StubHub to collect and remit the amusement tax. Accordingly, the City's action for a declaratory judgment in Count I fails and the motion to dismiss [28] is granted as to Count I. The motion to dismiss is denied in all other respects. This case is set for status on April 23, 2009 at 9:00 a.m.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated: March 30, 2009